UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANA NOAKES | * | CIVIL ACTION |
| | * | |
| | * | NO. 23-447 |
| VERSUS | * | |
| | * | DIVISION: "1" |
| ALEJANDRO N. MAYORKAS, | * | |
| SECRETARY, DEPARTMENT | * | MAGISTRATE JUDGE |
| OF HOMELAND SECURITY | * | JANIS VAN MEERVELD |

*************************************    *

## Order & Reasons

Before the Court is the Defendant, Secretary for the Department of Homeland Security,
Alejandro Mayorkas's, Motion to Dismiss Parties for Lack of Subject Matter Jurisdiction[1] and
Failure to State a Claim. (Rec. Doc. 13).[2] Plaintiff, Dana Noakes, opposes the Motion. (Rec. Doc.
14). Defendant filed a Reply Brief in support of his Motion to Dismiss. (Rec. Doc. 19). For the
following reasons, the Motion to Dismiss is **GRANTED**.

---

[1] Defendant styles this as a Motion to Dismiss Parties for Lack of Subject Matter Jurisdiction and Failure
to State a Claim, and in the "Standards of Review" section, Defendant cites to Rule 12(b)(1), noting it
applies when "the court lacks the statutory or constitutional power to adjudicate the case." (Rec. Doc. 13-1
at 4). The Motion's last sentence states, "Plaintiff's Title VII claims against TSA (Counts I-III) must be
dismissed for lack of subject matter jurisdiction or for a failure to state a claim." (Rec. Doc. 13-1 at 14). Yet
nowhere does Defendant ever explain why this Court lacks subject matter jurisdiction. As Plaintiff points
out in opposition, "the claims in Ms. Noakes' complaint arise out of the laws or Constitution … of the
United States." (Rec. Doc. 14 at 6 (citing 28 U.S.C. § 1331)). Federal question claims can be dismissed for
lack of subject matter jurisdiction (rather than failure to state a claim) only when the claim is not even
"colorable," *i.e.*, it is wholly insubstantial and frivolous or is immaterial and made solely for purposes of
obtaining jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). Defendant does not satisfy this standard
nor does Defendant address the jurisdiction issue in his reply. Therefore, the Court finds that it has subject
matter jurisdiction over the claim and focuses only on Defendant's argument relating to failure to state a
claim.
[2] The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
(Rec. Doc. 25).

## **Background**

This is an employment discrimination dispute. The following facts are as alleged by Plaintiff, Dana Noakes, in her Complaint, to the extent that the facts in her Complaint are relevant to the claims currently before this Court.[3]

Noakes, a white female, was employed by the Transportation Security Administration ("TSA") for over thirteen years, the last six of which she held the position of Supervisory Transportation Security Officer ("STSO"). (Rec. Doc. 1 at ¶ 6). During her employment with TSA, Noakes applied for three promotions. On or about December 20, 2021, she was denied a promotion for Transportation Security Manager ("TSM"). (*Id.* at ¶ 78). Instead of Noakes, TSA selected a non-white employee with no known history of any Equal Employment Office ("EEO") complaints to fill the position. (*Id.*) Then, "sufficient time elapsed" that she was "effectively denied" the other two promotions. Noakes, who previously lodged an EEO complaint in May of 2021, alleges that TSA improperly took into account her filing of an EEO complaint, its subsequent dismissal, her

---

[3] Noakes' Complaint confusingly includes claims and related facts from her previous District Court case that was based on her first EEO complaint and that was dismissed by the Court on the merits. *Compare* Civ. Action No. 22-213, Rec. Doc. 1 *with* Rec. Doc. 1 at ¶¶ 1–77; *see Noakes v. Dep't of Homeland Sec.*, No. CV 22-213, 2022 WL 11435959 (E.D. La. Oct. 18, 2022) (dismissing with prejudice Noakes' claims stemming from her first EEO complaint). She claims the inclusion is for "necessary context" but admits that her Complaint in the instant case is filed only as to her second EEO complaint. (Rec. Doc. 14 at p. 11 n.1). Facts forming the basis of claims previously adjudicated by the District Court are moot, however, and are excluded from the factual recitation here. While "workplace conduct is not measured in isolation" and courts consider untimely prior discriminatory acts of an employer in the Title VII context, *see Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270 (2001)); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (finding that Title VII does not bar an employee from using prior acts as background evidence in support of a timely claim), Noakes' Complaint includes facts that were previously *dismissed with prejudice*—not simply *untimely*. Therefore, these facts should not be relitigated. *Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1170 (5th Cir. 1980) (". . . dismissal with prejudice is deemed an adjudication on the merits for the purposes of res judicata."); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach, Inc.*, 575 F.2d 530, 534 (5th Cir. 1978) (". . . a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action."). And even if the Court were to consider the previously dismissed facts, those facts have already been determined to be unrelated to Noakes' race—a requirement for most of her claims here. *Noakes*, 2022 WL 11435959, at *8–10, 24–25.

race (white), and that TSA predetermined to choose a non-white employee for a promotion. According to Noakes, she was objectively qualified for the promotion and would have been selected had she not lodged the EEO complaint. (*Id.* at ¶ 80, 119).

Noakes alleges that TSA then "began auditing Noakes's hours in an attempt to later, pretextually, terminate her." (*Id.* at ¶ 81). As a result of this "audit," TSA instructed Noakes via a December 22, 2021 letter that she would not be allowed any further Family Medical Leave Act ("FMLA") leave after February 17, 2022, the end date of her 90-day approved leave period. (*Id.* at ¶ 84). In their letter, TSA explained that although Noakes only used 80 of her 480 hours of FMLA leave, she also took 764 hours of non-FMLA leave, most of which were Leave Without Pay ("LWOP"). The letter stated that Noakes had a concerning 100% scheduled absentee rate over the past six months, excluding her entitlement to FMLA. Noakes' LWOP, the letter explains, was causing an undue burden on operations and to her co-workers, resulting in a need to deny her further LWOP. (Rec. Doc. 13-4, 13-3 at p. 8).

On or about February 24, 2022, TSA took Noakes off FMLA leave and coded her as Absent Without Leave ("AWOL"). (Rec. Doc. 1 at ¶ 85). Noakes alleges that she was entitled to FMLA qualified leave, as she had only used 80 of the 480 allowed hours of FMLA leave. According to Noakes, TSA denied her further leave in retaliation for comments Noakes made on social media, prior complaints against her coworkers, and her EEO complaint.

On or around September 10, 2022, Blue Cross Blue Shield, Noakes' health insurance provider through TSA, sent her a letter stating that her coverage was cancelled by TSA. One month later, TSA issued a letter to Noakes explaining that it cancelled her health insurance through TSA but that she could retain health insurance if she resigned. Noakes alleges that she was "forced to choose resignation" and was "constructively terminated" when faced with the loss of health

insurance versus the prospect of regaining health insurance if she resigned. She proceeded to resign on October 11, 2022. (*Id.* at ¶ 86–89).

Based on the aforementioned events, Noakes began the EEO complaint process. On or around November 8, 2022, Noakes received the Final Agency Decision as to her EEO complaint, finding that Noakes failed to prove that TSA discriminated against her and entitling her to file the instant Complaint within 90 days. (*Id.* at ¶ 101); (Rec. Doc. 13-3 at p. 11). The instant Complaint, filed against the Secretary for the Department of Homeland Security, Alejandro Mayorkas, alleges that she was subjected to unlawful (1) hostile work environment based on race, (2) retaliation based on prior protected complaints, (3) and race discrimination—all in violation of Title VII. (*See generally* Rec. Doc. 1). Additionally, she alleges that she was constructively discharged. (*Id.* at ¶ 89). Mayorkas now moves to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. (Rec. Doc. 13).

## Law and Analysis

### 1. Standard on a Motion to Dismiss

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face." *Id.* Courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)); *see also Webb v. Morella,* 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *Fernandez-*

4

*Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

In the employment discrimination context, the Supreme Court has held that to survive a motion to dismiss, a plaintiff need not plead facts sufficient to establish a prima facie case, as required under the seminal *McDonnell Douglas* framework applicable to the burden of proof in Title VII cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss [in a Title VII case]."); *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510–12). Although the Court rendered *Swierkiewicz* before it clarified the pleading standard in *Twombly* and *Iqbal*, *Swierkiewicz*'s primary holding—that a plaintiff need not establish a prima facie case at the pleading stage—is still good law. *See Twombly*, 550 U.S. at 555.

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit has recognized that the court may also consider documents attached to a motion to dismiss by the defendant or an opposition to that motion if they are referred to in the plaintiff's complaint and central to her claim. *Id.* at 498-99; *Walch v. Adjutant General's Dep't of Tex.,* 533 F.3d 289, 293–94 (5th Cir. 2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"). For example, in *Carter v. Target Corp.*, the court held that the district court was permitted to consider the EEOC charges attached to the defendant's motion to dismiss because they were referenced in the plaintiff's complaint and were central to plaintiff's claim. 541 F. App'x 413, 417 (5th Cir. 2013).

### 2. Noakes' Complaint Fails to State a Cognizable Title VII Hostile Work Environment Claim (Count I)

To establish a hostile-work-environment claim, the employee must establish that:

(1) [she] belongs to a protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (quoting *Ramsey*, 286 F.3d 264, 268). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee is insufficient, without more, to support Title VII liability."); *see Jones v. Cont'l Cuisine, Inc.*, 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a race based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting). A hostile work environment must be found to "be both objectively and subjectively offensive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Noakes' Complaint states that "TSA further fostered and permitted a severe and pervasive hostile work environment based on race, as evidenced by: . . . (9) auditing and restricting Ms. Noakes's FMLA hours; (10) denying her multiple promotions and giving at least one position to a non-white employee; and (11) constructively terminating her by withholding her health insurance unless she resigned."[4] (Rec. Doc. 1 at ¶ 107). Mayorkas, in the instant Motion to Dismiss, argues that Noakes fails to establish that she was subjected to severe or pervasive racial discrimination or that she was a victim of an "anti-white racial motive." Further, he argues that her allegations are entirely conclusive, wholly speculative, and her only evidence that race is involved is her subjective belief. (Rec. Doc. 13-1 at pp. 11-12). In her opposition, Noakes alleges—using facts

---

[4] Noakes lists eight additional ways that TSA fostered and permitted a severe and pervasive hostile work environment based on race. Those facts, however, are omitted here as they were previously dismissed by the District Court on the merits and are now therefore moot. *Noakes*, 2022 WL 11435959 (dismissing with prejudice Noakes' claims stemming from her first EEO complaint).

previously dismissed by the Court—that she was the victim of pervasive and severe race-based harassment, despite asserting no facts correlating TSA's actions to her race. Noakes reaches this conclusion by arguing that differential treatment, such as what she suffered here when non-white employees were allegedly treated more favorably, is sufficient to show racially motived conduct. (Rec. Doc. 14 at pp. 15–18). Namely, in relevant part,[5] that a non-white employee was given a promotion that she applied for, that non-white employees did not have their FMLA hours audited and restricted, and non-white employees were not constructively terminated. (*Id.*).

Even assuming that these incidents are properly considered incidents of harassment (as opposed to disparate treatment incidents), which this Court strongly doubts, the Court finds that Noakes fails to state a plausible claim for hostile work environment. The facts that Noakes pleads do not support a finding that Noakes' alleged harassment was *because* of her race and not some other factor. Noakes' Complaint is silent as to the animus of any of her alleged harassers, the races of the two employees chosen for the other two promotions that she did not receive, and whether non-white employees who received allegedly different treatment had comparable histories of leave and absenteeism as Noakes. Indeed, no facts, other than Noakes' subjective belief, suggest that TSA's conduct was motivated by race. Mere belief of racial discrimination, however, is not enough, even at the motion to dismiss stage. *See Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (unpublished) (finding that the plaintiff's "*belief* that she was terminated because of her race . . . is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss."); *Sanchez v. Bexar Cty. Tex.*, No. 21-018, 2022 WL 209286, at *4 (W.D. Tex. Jan. 24, 2022) (citing *Iqbal*, 556 U.S. at 678) ("To survive a motion to dismiss, Sanchez

---

[5] Omitted here are the same additional alleged instances of differential treatment based on race from footnote 3 of this opinion. As noted above, those facts were previously dismissed by the District Court for failure to state a cognizable claim of a hostile working environment based on race in violation of Title VII, even under the liberal pleading standard of the Rule 12(b)(6) stage. *Noakes*, 2022 WL 11435959.

must identify more than her subjective belief that she was discriminated against; she must describe specific facts that support her claim that the [defendant] acted in an unlawfully discriminatory manner."). To assume that TSA's conduct was related to Noakes' race would be "too great of a logical leap in the absence of any factual support." *Noakes v. Dep't of Homeland Sec.*, No. CV 22-213, 2022 WL 11435959, at *5 (E.D. La. Oct. 18, 2022).

Moreover, not only do the allegations of the Complaint fail to make any plausible connection between the alleged harassment and Noakes' race, they also do not rise to the level of frequent and/or severe harassment required to state a claim. In sum, Noakes urges this Court to "extrapolate from the lone fact that Noakes is white and her coworkers are not and conclude that she was singled out for harassment." *Id.* at *9. That, alone, is not enough to raise her claim above the level of "naked assertion" to pass "the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Legal conclusions, unwarranted factual inferences, and a mere subjective belief of racial motivation is insufficient to show a hostile work environment. *Id.* at *12-13; *Marlbrough v. Cornerstone Chem. Co.*, No. CV 23-22, 2024 WL 1116177, at *6 (E.D. La. Mar. 14, 2024) (finding unspecified, conclusory allegations of harassment based on race insufficient to establish a hostile work environment). Accordingly, Noakes fails to state a plausible claim for hostile work environment.

### 3. Noakes' Complaint Does Not State a Cognizable Title VII Retaliation Claim (Count II)

Under Title VII, it is an

[U]nlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "To state a Title VII retaliation claim, the Plaintiff must allege facts that tend to establish: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Richards*, 405 F. App'x at 831; *see also Goings v. Lopinto*, No. 22-2549, 2023 WL 2709826, at *9 (E.D. La. Mar. 30, 2023) (quoting *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017) ("Although a plaintiff need not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim," the three prima-facie elements have "some relevance at the motion-to-dismiss stage, because in order to sufficiently state a Title VII-retaliation claim, a plaintiff must plead sufficient facts on all of the ultimate elements to make her case plausible.")).

As to the first element, "[p]rotected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)) (alteration in original). As to the second element, an action is materially adverse for purposes of a retaliation claim if the action "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A showing of "material" adversity is required to "separate significant from trivial harms" because Title VII is not a general civility code, and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Additionally, the "reasonable" requirement reflects an objective standard. *Id.* at 68-69.

Lastly, as to the third element, the plaintiff can establish causation "simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). "However, '[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone.'" *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has recognized periods of six weeks to two-and-a-half months "are close enough to show a causal connection." *Id.*

Noakes argues that following the filing of her May 2021 EEO complaint, TSA unlawfully retaliated against her by denying her a promotion to TSM in December 2021, auditing her hours in November 2021, denying her FMLA leave to which she was entitled in February 2022, and constructively terminating her in October 2022.[6] (Rec. Doc. 14 at p. 20). While Noakes' filing of an EEO complaint in May 2021 is a protected activity under the first element of an unlawful retaliation claim, *see Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013) (unpublished) ("Generally, a plaintiff who files a complaint with the EEOC engages in a protected activity.") (citation omitted), Noakes does not plead sufficient facts to support a finding that an adverse employment action occurred related to her FMLA leave (second element) or that a causal link existed between the protected activity and the adverse action (third element).

First, Noakes does not plead sufficient facts to support her claims of adverse employment action pursuant to the TSA's actions related to her FMLA leave. Specifically, the auditing of Noakes' FMLA hours was not an adverse employment action here. The alleged "auditing" that occurred here involved monitoring and communicating that the liberal allowance of leave time

---

[6] Just as in her hostile work environment claim, Noakes asserts additional alleged instances of retaliation previously dismissed by the District Court that will not be readdressed here.

granted to Noakes had expired. Such an action serves the legitimate business needs of the organization and does not fall within the definition of an adverse employment action. *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 133 (D.D.C. 2016) (considering many federal district and circuit court decisions to conclude that "an employer's '[m]onitoring [of] an employee's . . . time and attendance," . . . 'is a basic employment practice and as such could only be an adverse employment action if [plaintiff] previously had immunity from general employment policies.'") (quoting *Simms v. Navy Fed. Credit Union*, No. CV 02-0900-A, 2002 WL 32971969, at *5 (E.D. Va. Aug. 27, 2002)).

Similarly, the alleged restricting of Noakes' FMLA hours was not an adverse employment action here. Noakes regularly refers to her FMLA as having been restricted. And while the record is unclear as to how much FMLA leave was used or left by late February 2022,[7] it does not matter.  Using a combination of sick leave, FMLA, LWOP, and AWOL, Noakes was out of work for *many* months beyond her twelve-week FMLA entitlement, including six months before her FMLA period of November 22, 2021, through Pay Period 2022-4 (Feb. 16, 2022).[8]  Plus, she remained an inactive employee for an additional seven and a half months, from March to October 11, 2022, before she resigned, having never returned to work. Thus, TSA did not deprive Noakes of any leave time to which she was entitled. To the contrary, she was provided with months of leave to which she was not entitled. The only reason her leave time ceased was because she quit

---

[7] Noakes erroneously states she only used 80 of her 480 FMLA hours. That was true at the time the letter was written on December 22, 2021. "Thus far, as of Pay Period (PP) 25/2021, you have used 80 of your 480 hours." (Rec. Doc. 13-4 at p. 1). In the Department's Final Agency Decision, however, it notes that a Human Resources Specialist stated that Noakes used 305 of her FMLA hours, not 80. (Rec. Doc. 13-3 at p. 8).

[8] It is unclear whether this pay period begins or ends on February 16, 2022. Plaintiff's complaint suggests it ended on February 24, 2022. (Rec. Doc. 1 at ¶ 85). Either date is beyond the twelve weeks provided by the FMLA, which would have expired on February 14, 2022.

to reinstate her health benefits.[9] (Rec. Doc. 1 at ¶ 88). Accordingly, while she may well have preferred additional leave time with ongoing health coverage, denying her further FMLA did not constitute a legally actionable adverse employment action.

Second, even assuming that the facts alleged also meet the second element, which requires a showing of an adverse employment action, Noakes fails to plead facts sufficient to establish the third element requiring a causal connection between the adverse activity and the protected activity—even under the minimal pleading burden at the motion to dismiss stage. Noakes' Complaint is completely devoid of facts, outside of conclusory statements, alleging a causal link between her EEO complaint and any of the alleged instances of retaliation. Thus, in her opposition Noakes relies solely on the temporal relationship between the alleged instances of retaliation and her protected activity to establish a causal link. (Rec. Doc. 14 at pp. 19–20). But the facts supporting the timing of the protected activity and the alleged adverse consequences do not establish the requisite causal connection.

As noted above, to establish a causal link by timing alone, the adverse employment action must be "very close in time," and six weeks to two-and-a-half months has been recognized as close enough. *Brown*, 969 F.3d at 578. While Noakes argues that some of the alleged adverse actions occurred "within weeks" of the *dismissal* of Noakes' EEO complaint, the dismissal of the claim is not the protected action for purposes of establishing temporal proximity here—it is the filing of the complaint. *See Baldwin v. Holder*, No. 09-842, 2011 WL 2078614, at *8 (S.D. Tex. May 26, 2011) ("The Fifth Circuit has looked to the date an EEO complaint was filed to calculate temporal proximity.") (collecting cases). With that in mind, the protected activity, filing her first EEO complaint, occurred in May of 2021. Each of the alleged instances of retaliation occurred more

---

[9] By quitting, Noakes became eligible for Temporary Continuation of Coverage (TCC). The private sector refers to this as COBRA. (Rec. Doc. 13-5 at p. 2).

than six months after Noakes filed her first EEO complaint. This timing far exceeds what the Fifth Circuit has recognized as "very close in time" and is thus unquestionably insufficient to establish a causal link. *See Richards*, 405 F. App'x at 831 n.12 (granting motion to dismiss and noting that plaintiff "could not base her retaliation claim on her EEOC filing because that charge was filed over seven months after she was discharged."). Accordingly, Noakes failed to plead sufficient facts to establish a retaliation claim, warranting dismissal.

### 4. Noakes' Complaint Fails to State a Cognizable Title VII Disparate Treatment Discrimination Claim (Count III)

> Title VII provides that
>
> It shall be an unlawful employment practice for an employer—
> ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1). To survive a motion to dismiss a disparate treatment claim, the plaintiff must plead facts that tend to show that the defendant took an adverse employment action against the plaintiff *because* of her protected status, raising her right to relief above the speculative level. *Raj*, 714 F.3d at 331 (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004) ("[T]he 'ultimate question' in a Title VII disparate treatment claim [is] 'whether a defendant took the adverse employment action against a plaintiff *because* of her protected status.'")). While a plaintiff is not required to make a showing of each prong of the prima facie test for disparate treatment, when the plaintiff relies on circumstantial evidence of discrimination,[10] the court may reference the elements required for a plaintiff to make a prima facie case. *Chhim*,

---

[10] For the purposes of Title VII, "direct evidence includes any statement or written document showing a discriminatory motive on its face," and which, "if believed, proves the fact without inference or presumption." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citations omitted). Noakes' complaint does not allege direct evidence, only circumstantial evidence.

836 F.3d at 470; *see also Davis v. Tex. Health & Human Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (noting that although plaintiff need not submit evidence to establish a prima facie case for disparate treatment, the plaintiff needs to "at least include facts giving rise to a reasonable inference of plausibility that (1) she belongs to a protected class; (2) she applied for and was qualified for a position for which applicants were being sought; (3) she was rejected; and (4) a person outside of her protected class was hired for the position."). Thus, whether the defendant treated a similarly situated employee outside of her protected class more favorably is relevant to a court's analysis in evaluating whether a plaintiff has stated a claim for disparate treatment. *See Chhim*, 836 F.3d at 471 ("Chhim pleads no facts that suggest the applicant hired by the University was less qualified than Chhim or was similarly situated."); *Raj*, 714 F.3d at 331 ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest . . . that LSU treated similarly situated employees of other races or national origin more favorably.").

Here, Noakes alleges that "TSA exhibited anti-white bias" against her by (1) auditing and restricting her FMLA hours, (2) denying her multiple promotions and giving at least one position to a non-white employee, and (3) constructively terminating her by withholding her health insurance unless she resigned.[11] (Rec. Doc. 1 at ¶ 126). As evidence of anti-white bias, Noakes blanketly asserts that "TSA did not subject any non-white employee to the same treatment to which it subjected Ms. Noakes," that "there is no legitimate nondiscriminatory reason for TSA's behavior," and that she heard from multiple TSA employees that TSA "predetermined to choose a non-white employee" for a promotion. (*Id.* at ¶ 79, 130-131).

But Noakes does not plead any facts to suggest that she was treated less favorably than other similarly situated employees. For example, outside of her speculation and subjective belief,

---

[11] Other instances of alleged bias that have already been dismissed by the District Court are omitted here.

Noakes provides no facts that indicate how, and if, non-white employees actually abused the FMLA system such that the Court could find that other similarly situated individuals were treated more favorably than her with regard to FMLA leave. Indeed, Noakes does not suggest that TSA failed to audit any employee with a similar history of leave; instead, Noakes merely points out that at least one other employee referred to herself as an "FMLA Queen." (*Id.* at ¶ 83). But this fact does not show how other non-white employees' FMLA leave history compares with Ms. Noakes' or that Ms. Noakes was treated less favorably than other similarly situated employees with respect to her leave. Similarly, while Noakes notes that a non-white employee was given a promotion when Noakes was not, she alleges no facts suggesting that the non-white employee who was ultimately hired was similarly situated to her or less qualified than her. Noakes also fails to address the race of the other two individuals who were allegedly promoted instead of her, indicating that race was likely not a factor in the hiring decision of those individuals. The mere fact that Noakes believes she was "objectively qualified" for the position does not, in itself, give rise to a claim for disparate treatment.

Additionally, for the reasons already discussed related to Noakes' retaliation claim, neither the auditing of Noakes' FMLA hours nor the restriction of those hours, at least in the context of this case, is an adverse employment action. And even if an adverse employment action were to exist, the Court cannot reasonably infer from the facts plead that any of TSA's allegedly discriminatory actions were *because* of Noakes' race—a requirement for a disparate treatment claim. *Raj*, 714 F.3d at 331. Indeed, Noakes' own description of events suggests that race was not the issue here. Noakes therefore fails to state a cognizable Title VII disparate treatment discrimination claim.

*5. Noakes Failed to Exhaust Her Administrative Remedies and State a Cognizable Title VII Constructive Discharge Claim*

Noakes' Complaint alleges that she was constructively terminated when she was forced to resign to retain health insurance. (Rec. Doc. 1 at ¶ 89). Noakes argues that TSA's harassment gave her no choice but to resign. The alleged harassment includes (1) denying her a promotion that was instead awarded to a non-white person, (2) auditing her hours, (3) denying her further FMLA leave, and (4) stating that she could choose resignation to retain health insurance. (*Id.* at pp. 13-15). Mayorkas, in the instant motion to dismiss, argues that Noakes' constructive discharge claim has not been administratively exhausted, as it is a separate employment event for which Noakes was required to file a supplemental claim, and nothing in her EEO complaint put the Agency on notice of a possible constructive discharge claim. In the alternative, Mayorkas states that her claim fails because she resigned under reasonable circumstances from which she benefited by retaining her health insurance. (Rec. Doc. 13-1 at pp. 13-14). In her opposition, Noakes asserts that her constructive discharge claim is administratively exhausted, because constructive discharge resulting from Defendant's conduct is the type of event reasonably expected to grow out of the initial charges in her EEO complaint, such as TSA denying her FMLA leave. In the alternative, Noakes' opposition argues that because she included that TSA terminated her health insurance in her preliminary case information, a pre-decisional document that EEOC requested, the EEOC was on notice of her constructive discharge claim. Further, Noakes argues that, on the merits, she sufficiently alleged that Defendant's conduct resulted in her constructive discharge by pleading harassing conduct that would have caused any reasonable person to feel compelled to resign (Rec. Doc. 14 at pp. 13-14, 24).

As an initial matter, the Court must determine whether Noakes' constructive discharge claim has been administratively exhausted. "Employment discrimination plaintiffs

must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "While a court should construe an EEO claim broadly and look 'slightly beyond its four corners, to its substance rather than its label,' a claim has only been exhausted if it "could reasonably be expected to grow out of the charge of discrimination' such that the Agency would be on notice of and be able to investigate the claim." *Frank v. United States Dep't of Agric.*, No. CV 18-923, 2018 WL 4052197, at \*5 (E.D. La. Aug. 24, 2018) (citing *Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)). "The proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against him." *Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 272–73 (5th Cir. 2013). Excusing a plaintiff from the exhaustion requirement would "circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970).

Here, Noakes' EEO complaint does not include a constructive discharge claim and makes no mention of TSA's offer to retain health insurance if she resigned.[12] (Rec. Doc. 14-1). Noakes opted to have her EEO complaint adjudicated by a Department Final Agency Decision wherein her loss of health insurance, offer to resign, eventual resignation, nor any mention of a constructive discharge claim were ever discussed. (Rec. Doc. 13-3). The absence of a constructive discharge analysis and related facts suggest that, despite Noakes' mention of her loss of health insurance in

---

[12] Noakes was eligible for Temporary Continuation of Coverage (the "Private sector refers to this as COBRA") if she separated from TSA. (Rec. Doc. 13-5 at 2).

a pre-decisional document, the EEOC was not on notice of her claim. Furthermore, there is no reason to believe the facts of her EEO complaint, including denial of further FMLA leave, were sufficient to put TSA on notice of her constructive discharge claim. It is not reasonable to infer that TSA's termination of FMLA leave on the pre-determined end date of the allotted FMLA period would result in Noakes' resignation and a constructive termination claim. Indeed, she stayed on in an AWOL status for an additional seven months before quitting. Accordingly, Noakes' constructive discharge claim could not have reasonably been expected to grow out of her charge such that the Agency would be on notice. Thus, Noakes' constructive discharge claim was not administratively exhausted, and is not properly before this Court.

Regardless, Noakes' constructive discharge claim fails on the merits. To establish a claim for constructive discharge, the plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Jurgens v. E.E.O.C.*, 903 F.2d 386, 390 (5th Cir. 1990) (quoting *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980)). To determine whether a reasonable employee would feel compelled to resign, courts consider:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Id.* The Fifth Circuit has repeatedly held that where a plaintiff fails to establish a hostile work environment claim, his or her claim for constructive discharge necessarily fails as well. *Christian v. Lowe's Companies, Inc.*, No. CV 23-1241, 2024 WL 3639518, at *12 (E.D. La. Aug. 2, 2024).

"Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." *Id.*

Considering the factors listed above, a reasonable person would not feel compelled to resign based on TSA's actions in the instant case. *Plustache v. City of New Orleans*, No. CV 18-4844, 2021 WL 4948182, at *7 (E.D. La. Oct. 25, 2021) (finding that plaintiff's allegations of harassment, including three complaints that resulted in no discipline, two instances of plaintiff being denied access to records he requested, and his participation in a Civil Service Commission hearing, did not amount to harassment so extreme that an objective, reasonable employee would have felt compelled to resign). Almost all factors are inapplicable here and at least some of TSA's actions can hardly be described as harassment, as they were based on "the needs of the organization," Noakes' "continuing unscheduled absences," and the "undue burden on the operations and . . . fellow coworkers." (Rec. Doc. 13-4). Notably, Noakes' hostile work environment claim failed, suggesting the more stringent constructive discharge standard, as a matter of law, is not satisfied. *Christian*, 2024 WL 3639518, at *12 ("Because Mr. Christian's hostile work environment claim fails, he is not able to establish a higher degree of harassment that is required to establish a constructive discharge claim."); *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019) (finding that because plaintiff did not sufficiently state a hostile work environment claim, their constructive discharge claim fails as a matter of law). Accordingly, Noakes has failed to state a claim for constructive discharge, warranting dismissal.

## **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Rec. Doc. 13) is hereby **GRANTED**.

New Orleans, Louisiana, this 11th day of March, 2025.

Janis van Meerveld
United States Magistrate Judge